1  SUSAN F. DENT (SBN 292900)
   susan.dent@kennedyslaw.com
2  KENNEDYS CMK LLP
   455 Market Street, Suite 1900
3  San Francisco, CA 94105
   Telephone:  415-323-4483
4  Facsimile:   415-323-4445

5  L. CLINT CROSBY (*Pro Hac Vice Forthcoming*)
   ccrosby@bakerdonelson.com
6  BAKER DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
7  3414 Peachtree Road NE, Suite 1500
   Atlanta, GA 30326
8  Telephone:  404-577-6000
   Facsimile:   404-221-6501
9
   Attorneys for Plaintiff
10 MAX HOME, LLC

11

12             **UNITED STATES DISTRICT COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

14                    **WESTERN DIVISION**

15 MAX HOME, LLC,                  | Case No. 2:23-cv-05472

16          Plaintiff,              | **COMPLAINT FOR PATENT
                                    | INFRINGEMENT**
17     vs.

18 JONATHAN LOUIS INTERNATIONAL
   LTD.,
19
            Defendant.
20

21

22        Plaintiff, Max Home, LLC ("Max Home"), hereby files this Complaint for Patent

23 Infringement against Defendant, Jonathan Louis International Ltd. ("Defendant" or

24 "JL"), respectfully showing this Court as follows:

25 **I.    NATURE OF THE ACTION**

26        1.    This is a civil action against Defendant for patent infringement under the

27 Patent Act, 35 U.S.C. § 271, for the infringement of United States Patent Nos. U.S.

28 Patent No. 9,820,579 B2 ("the '579 Patent"), which was reissued as U.S. Patent No.

RE48,673 ("the '673 Patent"), based on Defendant's unauthorized manufacture, use, offer for sale, and/or sales in the United States and/or importation into the United States of its Design Lab "NEILS" 4 piece modular sectional sofa with gel plush cushions ("Accused Product"). True and correct copies of the '579 and '673 Patents are attached hereto as **Exhibits A** and **B**, respectively. True and correct photographs of the Accused Product are attached hereto as **Exhibit C**.

## II.   THE PARTIES

2.     Max Home is a Mississippi limited liability corporation with its principal place of business in Fulton, Mississippi.

3.     Defendant Jonathan Louis International Ltd. is a California corporation with its principal place of business at 12919 South Figueroa Street, Los Angeles, California 90061. JL can be served with services of process through its registered agent, Javier Sanchez, at 12919 South Figueroa Street, Los Angeles, California 90061.

## III.   JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     Personal jurisdiction over Defendant is proper in this District because Defendant is incorporated under the laws of California, maintains its principal place of business in this District, and has committed acts of patent infringement in this District.

6.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400 because Defendant has committed acts of infringement of the '673 Patent by making, using, offering for sale and/or selling Infringing Products in this judicial district, where they are located and where they have at least one regular and established place of business.

## IV.   FACTUAL ALLEGATIONS

7.     Max Home has been and continues to be engaged in the furniture manufacturing and sales in the United States.

8.      Max Home has created hundreds of products over the years and has grown in size, sophistication, and reputation to become a leading furniture manufacturer in the United States.

9.      Today, Max Home is headquartered in Fulton, Mississippi, where it has a manufacturing plant and offices.

10.     Defendant competes with Max Home and sells products to the furniture industry.

11.     On November 21, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '579 Patent to inventor Martin G. Silver for the invention entitled "Seating Sofa with Laminated Readily Reboundable Cooling Effect Seating Cushions." *See* Ex. A.

12.     Pursuant to 35 U.S.C. § 282, the '579 patent is presumed valid.

13.     Max Home is the owner by assignment of all rights, title, and interest in and to the '579 patent, including the right to enforce the '579 patent against infringers.

14.     The '579 Patent is generally directed to a cushion having a foam core sandwiched by opposing gel infused viscoelastic pads.

15.     On August 10, 2021 the USPTO fully and legally reissued the '579 Patent as the '673 Patent to inventor Martin G. Silver for the invention entitled "Seating Sofa with Laminated Readily Reboundable Cooling-Effect Seating Cushions."

16.     Pursuant to 35 U.S.C. § 282, the '673 patent is presumed valid.

17.     Max Home is the owner by assignment of all rights, title, and interest in and to the '673 patent, including the right to enforce the '673 patent against infringers.

18.     The '673 Patent is also generally directed to a cushion having a foam core sandwiched by opposing gel infused viscoelastic pads.

19.     Defendant also sells gel cushions with its sofas and is a competitor of Max Home's.

20.     Within approximately the last year, Max Homes learned JL is making, promoting, offering to sell, and distributing a gel cushion that copies the Seating Sofa

with Laminated Readily Reboundable Cooling-Effect Seating Cushions and infringes the '673 Patent.

21.     Specifically, JL offers its NEILS gel plush cushions, which practice the invention of the '673 Patent.

22.     On June 7, 2022 Max Home notified JL of JL's infringement through a cease and desist letter. A true and correct copy of Max Home's June 7, 2022 Cease and Desist letter is attached hereto as **Exhibit D**.

23.     JL responded through an email from its attorney, Jason Blackstone, on July 7, 2022, offering to meet and confer on Max Home's infringement allegations.

24.     Max Homes replied through an email of the undersigned counsel on July 15, 2022, making a tentative offer of settlement to license the '673 Patent under certain terms to be agreed upon.

25.     Mr. Blackstone responded to Max Home's offer on July 28, 2022, stating, "Thank you for revisiting the issue with your client and my client appreciates [the] offer outlined in your email below.  After careful review of your offer, **my client has decided point (sic) to discontinue the use of the claimed technology as described in your original cease and desist letter.**" (emphasis added).

26.     Relying on this representation of counsel, Max Home understood JL would discontinue its infringement and refrain from producing or selling the Accused Product. Thus, Max Home considered the matter resolved.

27.     However, Max Home has recently discovered that JL is still producing and fulfilling orders of the Accused Product, which is currently being sold by Nebraska Furniture Mart, Inc., with item description "JONLO DL10001XXLGXXA."

28.     Upon information and belief, Defendant's Accused Product is offered in some of the same furniture stores where Max Home's Seating Sofa with Laminated Readily Reboundable Cooling-Effect Seating Cushions are sold.

29.     Defendant may have other infringing offerings under other names. Any unknown infringing offerings are incorporated into the definition of "Accused Product."

COMPLAINT FOR PATENT INFRINGEMENT
Case No. 2:23-cv-05472

**Defendant's Infringing Acts Related to the Accused Product**

30. Defendant has known of, should have known of, or has been willfully blind to the '673 Patent. To the extent applicable, Plaintiff has complied with the patent marking and notice provisions of 35 U.S.C. § 287 by providing constructive and actual notice to Defendant of Defendant's infringement.

31. Defendant has possessed actual knowledge of the '673 Patent from at least as early as June 6, 2022, following receipt of the Cease and Desist letter.

32. Upon information and belief, Defendant and/or parties under its supervision or control have been tracking Plaintiff's business, products, and intellectual property rights and have been modeling products after those of Plaintiff.

33. Defendant and/or parties under its supervision or control have manufactured and/or sold a number of products intended to replicate Plaintiff's gel cushion products, including the Accused Product. Defendant has done so in blatant disregard of Max Home's intellectual property rights and without any attempt to secure any rights or authorization from Max Home to make, use, import, offer to sell, or sell the patented products.

34. The Accused Product infringes the claims of the '673 Patent for the reasons described below in Tables 1-4 and Figures 1-8.

35. Upon information and belief, Defendant makes, and then sells and offers for sale the Accused Product through various channels, including but not limited to wholesalers, physical retail stores and online marketplaces. Defendant also distributes the Accused Product through third parties.

36. Upon information and belief, Defendant thus engages in the unauthorized manufacture, use, offer for sale, and/or sale in the United States, and/or importation into the United States, of the Accused Product. Based on these acts, Defendant has directly infringed, and/or will directly infringe, the claims of the Patents-in-Suit that cover the method of manufacturing the Accused Product. Defendant has also induced indirect infringement by others.

**Infringement of the '673 Patent**

37.    On information and belief, based on Plaintiff's current investigation, Defendant, either directly or through an agent under its control, manufactures, uses, offers for sale, sells, markets, and/or distributes the Accused Product within the United States which practices at least Claims 1, 4, 5, 6, 7, 8, 9, 12, 13, 14, 15, 16, 19, 20, 21, 22, 23, 24, 27, 28, 29, and 30 of the '673 Patent and therefore infringes, and continues to infringe, those claims as follows below.

38.    The below **Table 1** shows how the Accused Product practices Independent Claim 1 and Dependent Claims 4-8 of the '673 Patent:

| Table 1 – '673 Patent Independent Claim 1 & Dependent Claims 4-8 | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| 1 | A laminated seating cushion for a piece of furniture, comprising: | The Accused Product has a seating cushion **(A)** for furniture. |
| | a pair of gel infused viscoelastic pads, each pad having a length, a width, and a thickness and defining a sitting side and an opposing adherence side; | The cushion includes two gel infused viscoelastic pads **(B)**. Each pad has a length, width and thickness that defines a sitting side and an opposing adherence side. |
| | a core foam pad having a core length, a core width, and a core thickness and defining opposing first and second core adherence sides, | The Accused Product has a core foam pad **(C)** having a core length, a core width, and a core thickness and defining opposing first and second core adherence sides. |
| | each of the pair of gel infused viscoelastic pads laminated on the adherence side to a respective one of the opposing first and second core adherence sides to define an adherence boundary therebetween, whereby the core foam pad is disposed between the | Each of the accused pair of gel infused viscoelastic pads **(B)** is laminated on the adherence side to a respective one of the opposing first and second core adherence sides to define an adherence boundary therebetween, whereby the core |

6

| | | |
|---|---|---|
| **Table 1 – '673 Patent Independent Claim 1 & Dependent Claims 4-8** | | |
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| | pair of gel infused viscoelastic pads; | foam pad **(C)** is disposed between the pair of gel infused viscoelastic pads **(B)**. |
| | a non-thermally insulative covering sheet in direct contact with and overlying the adherence boundary on a side face of the laminated core foam pad and gel infused viscoelastic pads; and | The Accused Product has a non-thermally insulative covering sheet **(D)** in direct contact with and overlying the adherence boundary on a side face of the laminated core foam pad **(C)** and gel infused viscoelastic pads **(B)**. |
| | a non-thermally insulative upholstered casing that receives and encloses the laminated viscoelastic pads and the core foam pad as a seating cushion; | The Accused Product has a non-thermally insulative upholstered casing **(E)** that receives and encloses the laminated viscoelastic pads **(B)** and the core foam pad **(C)** as a seating cushion. |
| | the laminated gel infused viscoelastic pads having a first state and a second state, the second state defining a recessed valley in a sitting side of an uppermost one of the pair of gel infused viscoelastic pads by compressive loading of a person sitting thereon during use of the seating cushion on the piece of furniture for seating purposes and the first state relaxed therefrom to a substantially planar surface; | The laminated gel infused viscoelastic pads **(B)** have a first state and a second state, the second state defining a recessed valley in a sitting side of an uppermost one of the pair of gel infused viscoelastic pads by compressive loading of a person sitting thereon during use of the seating cushion on the piece of furniture for seating purposes and the first state relaxed therefrom to a substantially planar surface. |
| | whereby the uppermost one of the gel infused viscoelastic pads of the seating cushion being occupied by the person for sitting on the piece of furniture, wicks | With the Accused Product, the uppermost one of the gel infused viscoelastic pads **(B)** of the seating cushion **(A)** being occupied by the person for sitting |

| Table 1 – '673 Patent Independent Claim 1 & Dependent Claims 4-8 | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| | body heat from the person inwardly to reduce perceived changes in a seating temperature and defines the valley while readily rebounding to the first state relaxed from the second state upon egress from sitting by the occupant person. | on the piece of furniture wicks body heat from the person inwardly to reduce perceived changes in a seating temperature and defines the valley while readily rebounding to the first state relaxed from the second state upon egress from sitting by the occupant person. |
| 4 | The laminated seating cushion as recited in claim 1, wherein the gel infused viscoelastic pads comprises a thermally communicative gel dispersed within a viscoelastic foam material. | The accused laminated seating cushion's gel infused viscoelastic pads **(B)** comprises a thermally communicative gel dispersed within a viscoelastic foam material. |
| 5 | The laminated seating cushion as recited in claim 4, wherein the thermally communicative gel is infused substantially uniformly within the viscoelastic foam material. | The accused laminated seating cushion **(A)** has the thermally communicative gel infused substantially uniformly within the viscoelastic foam material. |
| 6 | The laminated seating cushion as recited in claim 1, wherein the sheet comprises a non-woven fabric. | The accused laminated seating cushion's sheet **(D)** comprises a non-woven fabric. |
| 7 | The laminated seating cushion as recited in claim 1, wherein the casing comprises a woven fabric. | The accused laminated seating cushion's casing **(E)** comprises a woven fabric. |
| 8 | A furniture piece with a laminated seating cushion as recited in claim 1. | The Accused Product is a furniture piece with a laminated seating cushion as recited in claim 1. |

COMPLAINT FOR PATENT INFRINGEMENT
Case No. 2:23-cv-05472

39.    The below **Figures 1 & 2** illustrate the infringing elements of the Accused Product referenced in Table 1:

### Figure 1



COMPLAINT FOR PATENT INFRINGEMENT
Case No. 2:23-cv-05472

**Figure 2**



40.     The below **Table 2** shows how the Accused Product practices Independent

Claim 9 and Dependent Claims 12-15 of the '673 Patent:[1]

| Table 2 – '673 Patent Independent Claim 9 & Dependent Claims 12-15 | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| 9 | A furniture piece with at least one laminated seating cushion, comprising: | The Accused Product is a furniture piece **(A)** with at least one laminated seating cushion **(B)**. |

---

[1] Independent Claim 9 includes all the limitations of Claim 1 and the additional limitations of being a piece of furniture with a frame having front and rear rails joined at opposing ends to opposing arm structures, each arm structure having front and back arm posts and an arm top, and a pair of legs extending downwardly to support the frame on a floor surface, a great rail extending between the opposing back arm posts, and a seating foundation attached to the frame.

COMPLAINT FOR PATENT INFRINGEMENT
Case No. 2:23-cv-05472

| Table 2 – '673 Patent Independent Claim 9 & Dependent Claims 12-15 | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| | a frame for a furniture piece having a front and a rear rail joined at opposing ends to opposing arm structures, each arm structure having front and back arm posts and an arm top, and a pair of legs extending downwardly to support the frame on a floor surface, a great rail extending between the opposing back arm posts, and a seating foundation attached to the frame; | The Accused Product has a frame for a furniture piece having a front and a rear rail joined at opposing ends to opposing arm structures, each arm structure having front and back arm posts and an arm top, and a pair of legs extending downwardly to support the frame on a floor surface, a great rail extending between the opposing back arm posts, and a seating foundation attached to the frame; |
| | at least one seating cushion received on the seating foundation for occupancy by a person using the furniture piece purposes, the seating cushion comprising: | The accused furniture has at least one seating cushion **(B)** received on the seating foundation for occupancy by a person using the furniture piece purposes, the seating cushion **(B)** comprising. |
| | a pair of gel infused viscoelastic pads, each pad having a length, a width, and a thickness and defining a sitting side and an opposing adherence side; | The accused furniture has a pair of gel infused viscoelastic pads **(C)**, each pad **(C)** having a length, a width, and a thickness and defining a sitting side and an opposing adherence side. |
| | a core foam pad having a core length, a core width, and a core thickness and defining opposing first and second core adherence sides, | The accused furniture has a core foam pad **(D)** having a core length, a core width, and a core thickness and defining opposing first and second core adherence sides. |
| | each of the pair of gel infused viscoelastic pads laminated on the adherence side to a respective one of the opposing first and second | Each of the pair of gel infused viscoelastic pads **(C)** is laminated on the adherence side to a respective one of the opposing |

COMPLAINT FOR PATENT INFRINGEMENT
Case No. 2:23-cv-05472

| Table 2 – '673 Patent Independent Claim 9 & Dependent Claims 12-15 | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| | core adherence sides to define an adherence boundary therebetween, whereby the core foam pad is sandwiched between the pair of gel infused viscoelastic pads; | first and second core adherence sides to define an adherence boundary therebetween, whereby the core foam pad **(D)** is sandwiched between the pair of gel infused viscoelastic pads **(C)**. |
| | a non-thermally insulative covering sheet in direct contact with and overlying the adherence boundary on a side face of the laminated core foam pad and the gel infused viscoelastic pads; and | The accused furniture has a non-thermally insulative covering sheet **(E)** in direct contact with and overlying the adherence boundary on a side face of the laminated core foam pad **(D)** and the gel infused viscoelastic pads **(C)**. |
| | A non-thermally insulative upholstered casing that receives and encloses the laminated core foam pad and the gel infused viscoelastic pads, | The accused furniture has a non-thermally insulative upholstered casing **(F)** that receives and encloses the laminated core foam pad **(D)** and the gel infused viscoelastic pads **(C)**. |
| | the laminated gel infused viscoelastic pads having a first state and a second state, the second state having a recessed valley defined in a sitting side of an uppermost one of the pair of gel infused viscoelastic pads by compressive loading of a person sitting thereon during use of the seating cushion on the furniture piece for seating, | The laminated gel infused viscoelastic pads **(C)** have a first state and a second state, the second state having a recessed valley defined in a sitting side of an uppermost one of the pair of gel infused viscoelastic pads **(C)** by compressive loading of a person sitting thereon during use of the seating cushion on the furniture piece for seating. |
| 12 | The furniture piece as recited in claim 9, wherein the gel infused viscoelastic pads comprises a | The accused laminated seating cushion's gel infused viscoelastic pads **(C)** comprises a thermally |

| Table 2 – '673 Patent Independent Claim 9 & Dependent Claims 12-15 | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| | thermally communicative gel dispersed within a viscoelastic foam material. | communicative gel dispersed within a viscoelastic foam material. |
| 13 | The furniture piece as recited in claim 12, wherein the thermally communicative gel is infused substantially uniformly within the viscoelastic foam material. | The accused laminated seating cushion **(B)** has the thermally communicative gel infused substantially uniformly within the viscoelastic foam material. |
| 14 | The furniture piece as recited in claim 9, wherein the sheet comprises a non-woven fabric. | The accused laminated seating cushion's sheet **(E)** comprises a non-woven fabric. |
| 15 | The furniture piece as recited in claim 9, wherein the casing comprises a woven fabric. | The accused laminated seating cushion's casing **(F)** comprises a woven fabric. |

41.     The below **Figures 3 & 4** illustrate the infringing elements of the Accused Product referenced in Table 2:

**Figure 3**



14

**Figure 4**



42.     The below **Table 3** shows how the Accused Product practices Independent Claim 16 and Dependent Claims 19-23 of the '673 Patent:[2]

| Table 3 – '673 Patent Independent Claim 16 & Dependent Claims 19-23 | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| 16 | A laminated seating cushion for a piece of furniture, comprising: | A laminated seating cushion **(A)** for a piece of furniture, comprising: |
| | a pair of gel infused viscoelastic pads, each pad having a length, a width, and a thickness and defining a sitting side and an opposing adherence side; | The accused cushion **(A)** has a pair of gel infused viscoelastic pads **(B)**, each pad **(B)** having a length, a width, and a thickness and defining a sitting side and an opposing adherence side; |

---

[2] Independent Claim 16 includes all the limitations of Claim 1 except the limitation of a covering sheet.

15

| Table 3 – '673 Patent Independent Claim 16 & Dependent Claims 19-23 | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| | a core foam pad having a core length, a core width, and a core thickness and defining opposing first and second core adherence sides, | The accused cushion **(A)** has a core foam pad **(C)** having a core length, a core width, and a core thickness and defining opposing first and second core adherence sides, |
| | each of the pair of gel infused viscoelastic pads laminated on the adherence side to a respective one of the opposing first and second core adherence sides to define an adherence boundary therebetween, whereby the core foam pad is disposed between the pair of gel infused viscoelastic pads; and | Each of the pair of gel infused viscoelastic pads **(B)** is laminated on the adherence side to a respective one of the opposing first and second core adherence sides to define an adherence boundary therebetween, whereby the core foam pad **(C)** is disposed between the pair of gel infused viscoelastic pads **(B)**. |
| | a non-thermally insulative upholstered casing that receives and encloses the laminated viscoelastic pads and the core foam pad as a seating cushion, at least a portion of said casing being in direct contact with said core foam pad, | The accused cushion has a non-thermally insulative upholstered casing **(D)** that receives and encloses the laminated viscoelastic pads **(B)** and the core foam pad **(C)** as a seating cushion, at least a portion of the casing **(D)** being in direct contact with said core foam pad **(C)**. |
| | the laminated gel infused viscoelastic pads having a first state and a second state, the second state defining a recessed valley in a sitting side of an uppermost one of the pair of gel infused viscoelastic pads by compressive loading of a person sitting thereon during use of the seating cushion on the piece of | The laminated gel infused viscoelastic pads **(B)** have a first state and a second state, the second state defining a recessed valley in a sitting side of an uppermost one of the pair of gel infused viscoelastic pads **(B)** by compressive loading of a person sitting thereon during use of the seating cushion on the piece of |

16
COMPLAINT FOR PATENT INFRINGEMENT
Case No. 2:23-cv-05472

| Table 3 – '673 Patent Independent Claim 16 & Dependent Claims 19-23 | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| | furniture for seating purposes and the first state relaxed therefrom to a substantially planar surface; | furniture for seating purposes and the first state relaxed therefrom to a substantially planar surface. |
| | whereby the uppermost one of the gel infused viscoelastic pads of the seating cushion being occupied by the person for sitting on the piece of furniture, wicks body heat from the person inwardly to reduce perceived changes in a seating temperature and defines the valley while readily rebounding to the first state relaxed from the second state upon egress from sitting by the occupant person. | The accused cushion has the uppermost one of the gel infused viscoelastic pads **(B)** of the seating cushion being occupied by the person for sitting on the piece of furniture, wicks body heat from the person inwardly to reduce perceived changes in a seating temperature and defines the valley while readily rebounding to the first state relaxed from the second state upon egress from sitting by the occupant person. |
| | A laminated seating cushion for a piece of furniture, comprising: | A laminated seating cushion **(A)** for a piece of furniture, comprising: |
| | a pair of gel infused viscoelastic pads, each pad having a length, a width, and a thickness and defining a sitting side and an opposing adherence side; | The accused cushion **(A)** has a pair of gel infused viscoelastic pads **(B)**, each pad **(B)** having a length, a width, and a thickness and defining a sitting side and an opposing adherence side; |
| 19 | The laminated seating cushion as recited in claim 16, wherein the gel infused viscoelastic pads comprises a thermally communicative gel dispersed within a viscoelastic foam material. | The accused laminated seating cushion's gel infused viscoelastic pads **(B)** comprises a thermally communicative gel dispersed within a viscoelastic foam material. |

COMPLAINT FOR PATENT INFRINGEMENT
Case No. 2:23-cv-05472

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

| Table 3 – '673 Patent Independent Claim 16 & Dependent Claims 19-23 | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| 20 | The laminated seating cushion as recited in claim 19, wherein the thermally communicative gel is infused substantially uniformly within the viscoelastic foam material. | The accused laminated seating cushion **(A)** has the thermally communicative gel infused substantially uniformly within the viscoelastic foam material. |
| 21 | The laminated seating cushion as recited in claim 16, further comprising a non-thermally insulative covering sheet of a non-woven fabric. | The accused laminated seating cushion also has a non-thermally insulative coving sheet **(E)** of a non-woven fabric. |
| 22 | The laminated seating cushion as recited in claim 16, wherein the casing comprises a woven fabric. | The accused laminated seating cushion's casing **(D)** comprises a woven fabric. |
| 23 | A furniture piece with a laminated seating cushion as recited in claim 16. | The accused is a furniture piece with a laminated seating cushion as recited in claim 16. |

18     43.    The below **Figures 5 & 6** illustrate the infringing elements of the Accused
19 Product referenced in Table 3:[3]

20
21
22
23
24
25
26
27
28

---

[3] Independent Claim 24 includes all the limitations of Claim 9 except the limitation of a covering sheet.

COMPLAINT FOR PATENT INFRINGEMENT
Case No. 2:23-cv-05472

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Figure 5</u>**



A

COMPLAINT FOR PATENT INFRINGEMENT
Case No. 2:23-cv-05472

**Figure 6**



44.    The below **Table 4** shows how the Accused Product practices Independent Claim 24 and Dependent Claims 27-30 of the '673 Patent:

| Table 4 – '673 Patent Independent Claim 24 & Dependent Claims 27-30 | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| 24 | A furniture piece with at least one laminated seating cushion, comprising: | A furniture piece **(A)** with at least one laminated seating cushion **(B)**, comprising: |
| | a frame for a furniture piece having a front and rear rail joined at opposing ends to opposing arm structures, each arm structure having front and back arm posts and an arm top, and a pair of legs | a frame for a furniture piece **(A)** having a front and rear rail joined at opposing ends to opposing arm structures, each arm structure having front and back arm posts and an arm top, and a pair of legs |

**Table 4 – '673 Patent Independent Claim 24 & Dependent Claims 27-30**

| Claim | Claim Element | Claim Element Present in the Accused Product |
|---|---|---|
| | extending downwardly to support the frame on a floor surface, a great rail extending between the opposing back arm posts, and a seating foundation attached to the frame; | extending downwardly to support the frame on a floor surface, a great rail extending between the opposing back arm posts, and a seating foundation attached to the frame (unshown as internal components); |
| | at least one seating cushion received on the seating foundation for occupancy by a person using the furniture piece for furniture piece purposes, the seating cushion comprising: | at least one seating cushion **(B)** received on the seating foundation for occupancy by a person using the furniture piece for furniture piece **(A)** purposes, the seating cushion **(B)** comprising: |
| | a pair of gel infused viscoelastic pads, each pad having a length, a width, and a thickness and defining a sitting side and an opposing adherence side; | a pair of gel infused viscoelastic pads **(C)**, each pad having a length, a width, and a thickness and defining a sitting side and an opposing adherence side; |
| | a core foam pad having a core length, a core width, and a core thickness and defining opposing first and second core adherence sides, | a core foam pad **(D)** having a core length, a core width, and a core thickness and defining opposing first and second core adherence sides, |
| | each of the pair of gel infused viscoelastic pads laminated on the adherence side to a respective one of the opposing first and second core adherence sides to define an adherence boundary there-between, whereby the core foam pad is sandwiched between the pair of gel infused viscoelastic pads; | each of the pair of gel infused viscoelastic pads **(C)** laminated on the adherence side to a respective one of the opposing first and second core adherence sides to define an adherence boundary therebetween, whereby the core foam pad **(D)** is sandwiched between the pair of gel infused viscoelastic pads **(C)**. |

21

| **Table 4 – '673 Patent Independent Claim 24 & Dependent Claims 27-30** | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| | an upholstered non-thermally insulative casing that receives and encloses the laminated core foam pad and the gel infused viscoelastic pads, at least a portion of said casing being in direct contact with said core foam pad, | an upholstered non-thermally insulative casing **(E)** that receives and encloses the laminated core foam pad **(D)** and the gel infused viscoelastic pads **(C)**, at least a portion of said casing **(E)** being in direct contact with said core foam pad **(D)**. |
| | the laminated gel infused viscoelastic pads having a first state and a second state, the second state having a recessed valley defined in a sitting side of an uppermost one of the pair of gel infused viscoelastic pads by compressive loading of a person sitting thereon during use of the seating cushion on the furniture piece for seating, | the laminated gel infused viscoelastic pads **(C)** having a first state and a second state, the second state having a recessed valley defined in a sitting side of an uppermost one of the pair of gel infused viscoelastic pads **(C)** by compressive loading of a person sitting thereon during use of the seating cushion **(B)** on the furniture piece **(A)** for seating. |
| | whereby the one of the gel infused viscoelastic pads of the seating cushion being occupied by a person on the piece of furniture, wicks body heat from the person inwardly of the seating cushion to reduce perceived changes in a seating temperature and defines the valley while readily rebounding to the first state upon egress from sitting on the furniture piece by the person. | whereby the one of the gel infused viscoelastic pads **(C)** of the seating cushion **(B)** being occupied by a person on the piece of furniture, wicks body heat from the person inwardly of the seating cushion to reduce perceived changes in a seating temperature and defines the valley while readily rebounding to the first state upon egress from sitting on the furniture piece **(A)** by the person. |
| 27 | The furniture piece as recited in claim 24, wherein the gel infused viscoelastic pads comprises a | The accused laminated seating cushion's gel infused viscoelastic pads **(C)** comprises a thermally |

22

| Table 4 – '673 Patent Independent Claim 24 & Dependent Claims 27-30 | | |
|---|---|---|
| *Claim* | *Claim Element* | *Claim Element Present in the Accused Product* |
| | thermally communicative gel dispersed within a viscoelastic foam material. | communicative gel dispersed within a viscoelastic foam material. |
| 28 | The furniture piece as recited in claim 27, wherein the thermally communicative gel is infused substantially uniformly within the viscoelastic foam material. | The accused laminated seating cushion **(B)** has the thermally communicative gel infused substantially uniformly within the viscoelastic foam material. |
| 29 | The furniture piece as recited in claim 24, further comprising a non-thermally insulative covering sheet of a non-woven fabric. | The accused furniture piece cushion also has a non-thermally insulative covering sheet **(F)** that comprises a non-woven fabric. |
| 30 | The furniture piece as recited in claim 24, wherein the casing comprises a woven fabric. | The accused furniture piece casing **(E)** comprises a woven fabric. |

45.   The below **Figures 7 & 8** illustrate the infringing elements of the Accused Product referenced in Table 4:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Figure 7</u>**



A      B

COMPLAINT FOR PATENT INFRINGEMENT
Case No. 2:23-cv-05472

**Figure 8**



**WILLFUL INFRINGEMENT**

46.    Defendant has known of, should have known of, or has been willfully blind to, of the '673 Patent.

47.    Defendant has known of, should have known of, or has been willfully blind to, the fact that the complained-of conduct infringes the '673 Patent.

48.    Defendant's foregoing actions constitute willful infringement of the '673 Patent.

**COUNT I**
**Infringement of the '673 Patent**

49.    Max Home incorporates Paragraphs 1-48 as if restated verbatim.

50.    The '673 Patent is valid and enforceable.

51.     The Accused Products directly infringe and continue to directly infringe, literally and/or under the doctrine of equivalents, at least **Claims 1, 4, 5, 6, 7, 8, 9, 12, 13, 14, 15, 16, 19, 20, 21, 22, 23, 24, 27, 28, 29**, and **30** the '673 Patent as described in the preliminary infringement claim chart attached hereto as **Exhibit E**.

52.     Defendant also offers for sale, sells, and/or distributes the Accused Products which infringe the '673 Patent, thus inducing others to infringe the '673 Patent through use of the Accused Products. Further, Defendant encourages the use of the Accused Products through its website, distributors, and attended marketing events and trade shows where Defendant promotes use of the Accused Products and provides detailed instructions on the use of the Accused Products and their benefits. Therefore, Defendant has induced infringement by others, including customers, distributors, and end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others would infringe the '673 Patent, but while remaining willfully blind to that infringement.

53.     Based on Max Home's June 6, 2022 Cease and Desist letter specifically referencing the '673 Patent, Defendant, with knowledge that the Accused Products infringe the '673 Patent, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '673 Patent by providing the Accused Products for sale through its website, distributors, and at retail locations across this Judicial District, in California, and throughout the United States.

54.     Therefore, Defendant knowingly, actively induced and continues to knowingly induce third-party infringers—such as its distributors, customers, and end users—to practice the patented inventions of at least **Claims 1, 4, 5, 6, 7, 8, 9, 12, 13, 14, 15, 16, 19, 20, 21, 22, 23, 24, 27, 28, 29**, and **30** of the '673 Patent by manufacturing, using, offering for sale, selling, marketing, and/or distributing the infringing Accused Products, by instructing its customers and distributors how to use the Accused Products, and by encouraging and facilitating infringement by creating and distributing at least product and marketing materials related to the Accused Products. Defendant has

knowledge that the induced acts constitute patent infringement, in violation of 35 U.S.C. § 271(b).

55. Upon information and belief, Defendant's actions relating to the development, manufacture, offer for sale, sale, and distribution of the Accused Products were done by and for the benefit of Defendant.

56. Max Home is informed and believes Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '673 Patent, but while remaining willfully blind to that infringement.

57. Max Home seeks a judgment that Defendant directly infringes, induces infringement of, and contributes to infringement of one or more claims of the '673 Patent by the manufacture, distribution, offer for sale, and sale of the Accused Products in the United States.

58. Max Home has suffered, and will continue to suffer, irreparable harm as a result of Defendant's direct and indirect infringement of the '673 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined permanently by this Court.

59. Defendant's infringement constitutes willful and intentional infringement making this an exceptional case and justifying the imposition of treble damages and an award of reasonable attorney fees to Max Home within the provisions of 35 U.S.C. §§ 284, 285.

60. By reason of the above described acts of infringement, Plaintiff is entitled to an award of substantial damages in an amount to be determined at trial, including, at a minimum, its lost profits and/or a reasonable royalty, or both.

61. Furthermore, Plaintiff is entitled to injunctive relief barring Defendant from continuing to sell and offer for sale the Infringing Products

### JURY DEMAND

62. Max Home demands a trial by jury of all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, premises considered, Max Home respectfully requests that the Court enter judgment as follows:

A.   That Defendant has and is infringing the '673 patent, in violation of 35 U.S.C. § 271(a)-(b);

B.   An award of damages adequate to compensate Plaintiff for the patent infringement that has occurred pursuant to 35 U.S.C. § 284;

C.   A judgment declaring that Defendant's infringement of the asserted patents has been willful and deliberate;

D.   A judgment awarding Plaintiff treble damages and pre-judgment interest under 35 U.S.C. § 284 due to Defendant's willful and deliberate infringement of the asserted patents;

E.   A finding that this case is exceptional under 35 U.S.C. § 285;

F.   An assessment of costs, including reasonable attorney fees, pursuant to 35 U.S.C. § 285;

G.   A grant of preliminary injunction against any and all continuing infringement by the Defendant of the asserted patent before trial;

H.   A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining the Defendant from further acts of patent infringement;

I.   Any other accounting for damages;

J.   Any other appropriate interest and costs; and

K.   Such other and further relief as this Court deems just and proper.

Respectfully submitted,

DATED: July 7, 2023                    KENNEDYS CMK LLP

By: /s/ *Susan F. Dent*
SUSAN F. DENT
Attorneys for Plaintiff
MAX HOME, LLC